IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM D. ANDERSON,
          Plaintiff,                        06cv0759

          v.                              **Electronically Filed**

JACQUELINE R. MORROW,
CITY OF PITTSBURGH SOLICITOR,
THE CITY OF PITTSBURGH LAW DEPARTMENT,
CITY OF PITTSBURGH BUILDING INSPECTION DEPARTMENT,
          Defendants.

**MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT**

**February 26, 2007**

     **Introduction and Background.**

     Plaintiff William D. Anderson filed a *pro se* Complaint in Equity in the Court of

Common Pleas of Allegheny County, which was removed to this Court pursuant to 28 U.S.C. §

1441 by the municipal Defendants, Jacqueline R. Morrow, the Solicitor for the City of Pittsburgh

Solicitor, and the "City of Pittsburgh Building Inspector and the Office of Municipal

Investigations," based upon the federal civil rights claims raised in the complaint.  Although

captioned as a "Complaint in Equity," Plaintiff explicitly seeks monetary damages in the amount

of "Thirty Million Dollars ($30 mil)" for defamation and violations of the "4th and 14th

Amendment to the Constitution of the United States of America," and for damages stemming

from a series of actions allegedly taken against him, his auto body repair business, and property

he alleges was his residence during a period from January 1999 through October 2005.

     After careful consideration of Defendants' motion to dismiss and brief in support,

Plaintiff's response (which he entitled "Motion in Opposition of Defendants' Motion to

Dismiss"), Defendants' reply to Plaintiff's response, and all of the supporting documentation submitted on both sides, the Court granted defendants' motion to dismiss in part, and denied it in part.

In deciding the motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), the Court accepted the well-pleaded factual allegations of the complaint as true, and drew all reasonable inferences therefrom in favor of the plaintiff, *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital*, 185 F.3d 154, 155 (3d Cir. 1999), applying the rule that a cause of action should not be dismissed for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Construing the pleading in the light most favorable to the non-moving party, *Budinsky v. Pennsylvania Dept. of Environmental Resources*, 819 F.2d 418, 421 (3d Cir. 1987), and allowing the *pro se* plaintiff more leeway than counseled litigants, *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003), this Court found it appropriate to dismiss much of Plaintiff's complaint, for the reasons excerpted below:

<u>Harassment by Inspectors and Other Officials</u>

Plaintiff alleges he was repeatedly and unjustly inspected and harassed by various officials and employees of the City of Pittsburgh in the operations of his auto repair business from January 29, 1999 through April 2, 2003, and that the City failed to do anything about his complaints about the harassment. Complaint in Equity, ¶¶ 1-16. It is difficult to discern any federal constitutional violations in plaintiff's allegations, but the Court need not and does not decide the merits of these claims.

As defendants correctly argue, these claims are barred by the two year statute of limitations to the extent they raise civil rights/ section 1983 claims, see *Reitz v. County of Bucks*, No. 95-6603, 1996 WL 530021 *2 (E.D.Pa. 1997) (claim stemming from municipal defendants' allegedly unlawful seizure and detention of plaintiffs personal and real property governed by the two year

statute of limitations that applies to torts against real and personal property, 42 Pa.C.S. § 5524), and to the extent they attempt to raise a common law defamation cause of action, such claims are barred by Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-61, which does not permit defamation actions against public officials or municipalities. See, e.g., *Keim v. County of Bucks*, 275 F. Supp.2d 628 (E.D.Pa. 2003) (county and county corrections department were immune, under the Pennsylvania Political Subdivision Tort Claims Act, from county corrections officers' defamation and false light tort claims).

Plaintiff does not counter defendants' argument on the statute of limitations, and he does not suggest anything that might conceivably raise tolling or any other equitable impediment to application of the statute of limitations, and the Court therefore will dismiss these claims.

<u>Defendants Failed to Repair a Sink Hole in Street</u>

Although plaintiff's claim (if it is a federal claim) about the City's failure to respond to his complaint on or about April 25, 2004 about a large sink hole on Fushsia Way, Complaint in Equity, ¶ 17, was arguably within the statute of limitations, there is no constitutional right implicated, and this claim (if it is a federal claim) will be dismissed. Plaintiff also does not assert that he or his business or property sustained any damages from the sink hole or by the City's alleged failure to respond to his complaints about it, and to the extent this attempts to raise a state claim, it will be dismissed for failure to allege any damages to him.

Mem.Op. July 28, 2006 (doc. no. 20), at 3-4.

As to Plaintiff's claim of a Fourth Amendment violation, he states that on or about June 8, 2004, agents from the City of Pittsburgh, including employees from its Bureau of Building Inspection ("BBI"), executed a warrantless search of his property at 7428 Monticello Street in Pittsburgh, in which he claims he resided and owned pursuant to an unrecorded land installment contract purchased from the record owners, Mr. and Mrs. George Bouie. Plaintiff claims that employees of the BBI executed this search, "ransacking [his home] and ripping down curtains on the first floor and a blind from a second floor window." Complaint in Equity, ¶ 18. Plaintiff

3

further claims that defendants were unresponsive to his complaints about this ransacking. Defendants assert that plaintiff is not the record owner of this property and has no standing to assert damage claims.[1]

Given the liberality and leeway federal courts allow *pro se* plaintiffs, this Court was unable to say at *that* stage of the proceedings, that Plaintiff had no ownership or other personal interest in this property, or that he would ultimately be unable to prove *any* set of facts that might sustain a claim of a Fourth Amendment violation for a warrantless search that might have caused some damage to any interest he may have in this property.   Thus, the Court provisionally denied Defendants' motion to dismiss plaintiff's Fourth Amendment claim regarding the property at 7428 Monticello Street as premature, but without prejudice to raise the issue at an appropriate time in a motion for summary judgment following discovery.  Mem.Op. (doc. no. 20).  Following discovery, Defendants have moved for summary judgment on the Fourth Amendment claim, and the Court will grant said motion.

**Defendants' Motion for Summary Judgment (doc. no. 41)**

Defendants allege, *inter alia*, that Plaintiff has failed to raise sufficient facts to prove essential elements of his claim that his Fourth Amendment rights were violated.  Defendants' Brief in Support of Motion for Summary Judgment, Doc. No. 42 at 2.  The Defendants further contend that Plaintiff has also failed to properly establish an improper custom, policy or procedure on the part of the City of Pittsburgh to successfully pursue a Section 1983 claim. Defendants' Brief in Support of Motion for Summary Judgment, Doc. No. 42 at 7.

---

[1] For purposes of the motion for summary judgment, the Court will assume that Plaintiff had an interest in this property sufficient to give him standing to challenge the search.

4

In the months preceding their June 8, 2004 search of 7428 Monticello Street, the City of Pittsburgh received numerous complaints from neighbors concerning the conditions of the property, including that individuals were dumping buckets of urine and feces from the windows of the property, and that the property had been abandoned and was possibly being used as a "crack house." *See* Sworn Affidavit of Paul Loy, Exhibit B, Doc. No. 41-6 at 1-2. Defendants cite a litany of housing code violations as additional reasons for entry.[2] Furthermore, BBI was unsuccessful in its attempts to locate an owner for the property. *See* Sworn Affidavit of Kathleen Kraus, Exhibit D, Doc. No. 41 at 4-5, 8-10. In fact, at the time of the search, county records show that 7428 Monticello Street was recorded in the name of Mr. and Mrs. George Bouie, and Plaintiff has admitted that the document by which he claims ownership (a land installment contract) was not provided to any defendants or city employees until after their entry. *See* Deposition of William D. Anderson, Exhibit A, Doc. No. 41-2 at 20.

Based upon these circumstances, the City's Bureau of Building Inspection decided that a search of 7428 Monticello Street was necessary in the interest of public safety. *See* Sworn Affidavit of Kathleen Kraus, Exhibit D, Doc. No. 41 at 4-5, 8-10. This warrantless search was conducted pursuant to Section 104.6 of the BOCA Building Code, which provides:

**Right of Entry:** When it is necessary to make an inspection to enforce the

---

[2] The Notice of Condemnation, dated July 12, 2004, identified the following dangerous conditions and code violations at 7428 Monticello Street: "sandstone foundation spalling with holes; soffit and fascia rotted, sections loose; roof and rafters leaking sections rotting, front port floor section and rails missing; left side brick wall towards rear cracked and bowed; right side wall bricks loose and bowed; chimney mortar erosion; windows broken open; gutters leaking and rotted, downspouts missing; interior floors holes through out; plaster damaged; exposed lathe; interior stairs weak; rear [sic] exterior stairs collapsing; rear 2 story addition rotted; structure weak partial collapse." Sworn Affidavit of Kathleen Kraus, Exhibit A, Doc. No. 41 at 9 (quoting Final Report, Office of Municipal Investigations, Doc. No. 41-8 at 9).

provisions of this code, or where the building official has reasonable cause
to believe that there exists in a structure or upon a premises a condition which
is contrary to or in violation of this code which makes the structure or premises
unsafe, dangerous or hazardous, the building official is authorized to enter the
structure or premises at reasonable times to inspect them or to perform the
duties imposed by this code, provided that if such structure or premises is
occupied that credentials be presented to the occupant and entry requested.
If such structure or premises is unoccupied, the building official shall first
make a reasonable effort to locate the owner or other person having charge or
control of the structure or premises and request entry.  If entry is refused, the
building official shall have recourse to the remedies provided by law to secure
entry.

When employees of BBI arrived at Plaintiff's alleged residence, they found the front door
open.  *See* Sworn Affidavit of Paul Loy, Exhibit D Doc. No. 41-6 at 2.  Plaintiff claims that the
front door was actually kicked in, however he has failed to provide any evidence corroborating
damage to the door, or any repairs thereof.  *See* Sworn Affidavit of Kathleen Kraus, Exhibit D,
Doc. No. 41 at 9 (quoting Final Report, Office of Municipal Investigations, Doc. No. 41-8 at 9).
Furthermore, Plaintiff admits that he was not home at the time of the search, so he cannot dispute
the factual allegations that the door was open from his own knowledge, nor does he offer any
other evidence to dispute Defendants' evidence that the door was open.  *See* Complaint in Equity,
Doc. No. 1-3 at ¶ 18.  The only physical damage that Plaintiff claims as a result of the search is
that his "blinds had been ripped down different than when [he] went to work."  Deposition of
William D. Anderson, Exhibit A, Doc. No. 41-5 at 101.

Plaintiff has provided no evidence that Defendants had an improper policy or engaged in
an improper procedure with regard to the search of his purported residence, or to support his
conclusory assertion that:

Defendants have failed to prove they followed Pa. BOCA code enforcement
procedures that would grant them any immunity from responsibility namingly

[sic] sections 3205.1, 3204.2 evaluation process, 110.4 written daily report of
inspections with a separate report of violations, 120.0 unsafe structures, 120.1
right to deem unsafe.

Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment, Doc. No. 46 at 4.

Plaintiff does not specify the manner in which the employees of Defendant BBI may have failed

to follow these procedures in their search of June 8, 2004.

Subsequent to the search in question, BBI inspectors posted the property with a notice of

condemnation.  Sworn Affidavit of Kathleen Kraus, Exhibit D, Doc. No. 41 at 4 (quoting Final

Report, Office of Municipal Investigations, Doc. No. 41-8 at 2).  Plaintiff initiated a Petition for

Emergency Relief in the Court of Common Pleas from the BBI's condemnation of the property to

permit him to "complete repairs to his homestead to meet code specifications and to secure legal

and rightful title of property."  Court of Common Pleas of Allegheny County, Docket No. GD

04-018379.  On August 23, 2004, his Petition was denied by Judge Lutty.  On September 14,

2004, Plaintiff filed a Statutory Appeal in the Civil Division of the Court of Common Pleas to

challenge the "Notice of Condemnation and demand for the appointment of a board of Survey."

Court of Common Pleas of Allegheny County, Docket No. GD 04-00996.  This Appeal was

transferred to Judge Gallo in the Criminal Division of the Court of Common Pleas, who granted

the City of Pittsburgh's Motion to Quash the Statutory Appeal on November 9, 2004.  Plaintiff

appealed this judgment to the Commonwealth Court, but his case was dismissed on December

27, 2004 due to his failure to pay the court's filing fees.  Commonwealth Court of Pennsylvania,

Docket No. 2594 C.D. 2004.

On July 29, 2005, Plaintiff filed a second Petition for Emergency Relief against the City

of Pittsburgh's Condemnation of 7428 Monticello Street. Court of Common Pleas, Docket No.

GD 04-27142.  On August 1, 2005, Judge O'Brien granted Plaintiff a 30 day stay to abate the

numerous violations and have utilities restored to the property.  On September 1, 2005, Judge

Horgos determined that Plaintiff failed to comply with Judge O' Brien's court order, and ordered

the City of Pittsburgh to conduct another inspection of the property.  Upon completion of that

inspection, the property was razed on September 11, 2005.  (This summary of the state court

litigation is taken from Defendants' Response to Plaintiff's Motion in Opposition to Defendants'

Motion to Dismiss, Doc. No. 19-1 at 4.  Record evidence produced by both Plaintiff and

Defendants confirm the accuracy of this summary in large part, and there is no dispute that

Plaintiff pursued multiple state court litigation to challenge the condemnation, which was

unsuccessful.)

**Summary Judgment Standards.**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of

Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d

Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the

evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a

jury could reasonably find either that the plaintiff proved his case by the quality and quantity of

the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail

Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all

doubts, in favor of the nonmoving party ).

**No Fourth Amendment Violation.**

Plaintiff claims that employees of the BBI and/or City of Pittsburgh Police Officers executed the search of June 8, 2004, "ransacking [his home] and ripping down curtains on the first floor and a blind from a second floor window," and that "[w]hen Plaintiff returned to his residence he discovered the front door wide open leaving all his belongings unsecured." Complaint in Equity, ¶ 18.  Because it was unnecessary for BBI to obtain a search warrant to inspect 7428 Monticello Street, and BBI's subsequent search of the premises was reasonable under the circumstances, the Court finds no Fourth Amendment violation.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must "demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

When people have a reasonable expectation of privacy in their persons or effects, all searches and seizures must be supported by a warrant, unless they fall into one of the exceptions to that requirement.  *See Minnesota v. Dickerson,* 508 U.S. 366, 372-73 (1993) ("Time and again, this Court has observed that searches and seizures conducted outside the judicial process, without

10

prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment--
subject only to a few specifically established and well delineated exceptions.") (internal quotation
marks and citations omitted)).  Indeed, "there are instances when a search furthers a 'special
government need' beyond that of normal law enforcement such that the search, although not
supported by the typical quantum of individualized suspicion, can nonetheless still be found
constitutionally 'reasonable.' "  *Neumeyer v. Beard*, 421 F.3d 210, 214 (3d Cir. 2005) (quoting
*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995); *Mich. Dep't of State Police v. Sitz*, 496
U.S. 444 (1990)).  As the United States Court of Appeals for the Third Circuit recently stated,
"[g]enerally, a search or seizure must be carried out pursuant to a warrant to be considered
reasonable under the Fourth Amendment."  *Watson v. Abington Twp.*, ___ F.3d ___, 2007 WL
518657, *4 (3d Cir. 2007) (citing *Shoemaker v. Handel*, 795 F.2d 1136, 1142 (3d Cir. 1986).
Municipal searches of apartments and other residences "typically require a warrant."  *Gardner v.
McGroarty*, 68 Fed.Appx. 307, 311 (3d Cir. 2003) (citing *Camara v. Municipal Court of City &
County of San Francisco*, 387 U.S. 523, 533 (1967).

It is undisputed that the warrantless search of Plaintiff's alleged home did in fact take
place.  While municipal searches of residential structures for code violations typically requires
that a search warrant be obtained, *Camara*, 387 U.S. at 533, defendants "may show that
permission to search was obtained from a third party who possessed common authority over or
other sufficient relationship to the premises or effects sought to be inspected."  *United States v.
Matlock*, 415 U.S. 164 (1974).  Furthermore, the Supreme Court has noted that, "as a practical
matter and in light of the Fourth Amendment's requirement that a warrant specify the property to
be searched, it seems likely that *warrants should normally be sought only after entry is refused*

unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry." *Camara*, 387 U.S. at 539-40 (1967) (emphasis added).  Here, entry to 7428 Monticello Street was never refused (in fact, the record evidence shows that the door was open), *and* there were numerous "satisfactory reason[s] for securing immediate entry" - namely the numerous housing code violations and complaints from neighbors that the residence was operating as a "crack house."  Under these circumstances, there were exigencies which excused the entry without a warrant.

As the decision not to obtain a warrant for the search at issue was based upon a "special government need beyond that of normal law enforcement," e.g., the need to protect public safety, it was appropriate for the inspectors to proceed to inspect the premises without obtaining a warrant, and this decision comported with the requirement of reasonableness mandated by the Fourth Amendment.  *Neumeyer*, 421 F.3d at 214.

To reiterate, the authority pursuant to which employees of BBI conducted the warrantless search of 7428 Monticello Street is found in Section 104.6 of the BOCA Building Code, which permits inspections when necessary to enforce other provisions of the Code, or where there is reasonable cause to believe that a code violation or safety risk exists.  The BBI had reasonable cause to believe that an unsafe and dangerous condition existed in violation of the code that made 7428 Monticello Street unsafe, dangerous or hazardous (*see* Sworn Affidavit of Kathleen Kraus, Exhibit D, Doc. No. 41 at 9); and as the residence was unoccupied, the Defendants made reasonable efforts to locate the owner of the property (*id*. at 11-12).

Here, entry to 7428 Monticello Street was never refused (in fact, the door was open), *and* there were numerous "satisfactory reason[s] for securing immediate entry" - namely the litany of

housing code violations and complaints from neighbors that the residence was operating as a "crack house."  *See* Sworn Affidavit of Paul Loy, Exhibit B, Doc. No. 41-6 at 1-2.  Under these circumstances, there were exigencies which excused the entry without a warrant.

As to the reasonableness of the search itself, "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing.  While such suspicion is not an 'irreducible' component of reasonableness, [the Supreme Court has] recognized only limited circumstances in which the usual role does not apply."  *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  Such circumstances include administrative searches of closely regulated businesses[3], other so-called "special needs" cases[4], and suspicionless "checkpoint" searches.[5]

The BBI's search of Mr. Anderson's purported residence on June 8, 2004 comported with the principles enumerated above regarding the "specifically established and well delineated exceptions" to the Fourth Amendment's warrant requirement.  As an administrative search necessary to further the City's regulatory scheme of public safety, the City's failure to obtain a warrant before conducting the search in question was clearly reasonable.  As the Third Circuit

---

[3] Administrative searches of closely regulated businesses are permissible without a warrant when: (1) a substantial government interest informs the regulatory scheme under which the search is made; (2) the search is necessary to further the regulatory scheme; and (3) the statute's inspection program is a "constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 702-04 (1987); *see also Camara*, 387 U.S. 523 at 534-39 (administrative inspection to ensure compliance with city housing code is acceptable).

[4] Such cases involve situations where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985).

[5] These searches are permissible under the Fourth Amendment when a court finds an appropriate balance between "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Illinois v. Lidster*, 540 U.S. 419, 427 (2004).

Court of Appeals has stated, for purposes of an administrative search such as this, "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' " *United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006) (quoting *Camara*, 387 U.S. at 538). Furthermore, "the gravity of the public concerns served by the seizure" (public safety), the "degree to which the [search] advances the public interest" and are necessary to determine whether or not a reported risk poses a danger to the community, and "the severity of the interference with individual liberty" (in this case, nothing more than damaging blinds and leaving a door open), all weigh in favor of a conclusion that the BBI's search of Plaintiff's home was reasonable.

Moreover, the condemnation and subsequent demolition of 7428 Monticello Street was approved by at least four different Judges of the Court of Common Pleas of Allegheny County and a Pennsylvania appellate court between August, 2004 and July, 2005.  This judicial scrutiny which approved the condemnation and demolition strongly corroborates the reasonableness of the BBI's warrantless inspection of the premises, as the property clearly posed an immediate risk to public safety .  Between the Defendants' following of the applicable BOCA Building Code Standard, and the judicial determinations that the residence was unsafe and uninhabitable, this warrantless search was reasonable under all of the circumstances.

Based upon the foregoing, the City of Pittsburgh's administrative search of Plaintiff's home was reasonable, and did not violate his Fourth Amendment rights.  Thus, Plaintiff's Section 1983 claim must fail.

**Defendants' Fourth Motion for Protective Order (doc. no. 43).**

One other item deserves some discussion.  Defendants filed a Fourth Motion for Protective Order (doc. no. 43) on December 20, 2006, seeking sanctions in the nature of precluding plaintiff from scheduling any additional depositions or undertaking further discovery as a result of his failure to diligently pursue his case, and inasmuch as the discovery period had expired.  As background, certain persons under the City of Pittsburgh's control did not show up for plaintiff's scheduled depositions (which were to take place in this Court's jury room) on September 15, 2006, without having moved for a protective order to challenge plaintiff's right to some of the depositions.  This Court sanctioned defendants $340.00 by Text-Only Order dated September 29, 2006.[6]

Defendants' Fourth Motion for Protective Order asserts that, since that time, defendants have made their employees and officials available and have been cooperative in the discovery process, but that plaintiff has been less than cooperative and unresponsive in rescheduling depositions.  As a result, plaintiff has not deposed some of the City of Pittsburgh officials or employees he originally had intended to depose.  After reviewing the Fourth Motion for Protective Order and plaintiff's response thereto, and their respective attachments, the Court

---

[6] The text-only order states:
ORDER granting in part and denying in part Motion for Sanctions [25]. Defendants were noticed for a deposition on September 15, 2006, and did not file a Motion for Protective Order as counsel indicated he would do, but instead simply failed to show for the depositions without substantial justification. Accordingly, IT IS HEREBY ORDERED that a sanction is imposed upon defendants, pursuant to Fed.R.Civ.P. Rule 37(b)(2)(E), in the amount of $340.00, to reimburse plaintiff for lost wages and reasonable costs of a court reporter and videographer. The Court does not deem plaintiff's request for $400.00 for a four hour consultation with an attorney to be reasonable, and denies that request. Text-only entry; no PDF document will issue. This text-only entry constitutes the Court's order or notice on the matter.

finds that defendants have made good faith and reasonable efforts to facilitate plaintiff's depositions and discovery, but that plaintiff's failure to communicate promptly or to cooperate with counsel for defendants precluded him from taking additional depositions or obtaining other discovery within the discovery period.

Because defendants filed their motion for summary judgment and plaintiff responded in due course and joined all issues raised therein, this motion is moot.   However, the Court finds that plaintiff had ample opportunity to schedule additional depositions or seek additional discovery.  If plaintiff believed that defendants were not acting in good faith or were not being cooperative with him, he could have sought this Court's assistance, and the Court would have assessed responsibility and made appropriate orders.  (Indeed, plaintiff was successful in enlisting this Court's assistance in the discovery process, including permitting plaintiff to use the jury room for depositions and sanctioning defendants when they did not appear.)

Plaintiff did not file motions to produce or compel additional discovery, nor did he request an enlargement of the discovery period from this Court.  Accordingly, plaintiff had a full and fair opportunity to take depositions and to discover additional evidence.

An appropriate order will be entered granting summary judgment in favour of defendants.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All counsel of record